Eliezer Marcano Torres, demandante, *v.* Autoridad de las Fuentes Fluviales de Puerto Rico, demandada y demandante contra tercero y recurrente; Salvador L. Morales, tercero demandado y recurrido.

*Número:* R-64-29        *Resuelto:* 20 de enero de 1965

*José Antonio Arabía, Carlos Díaz Lamoutte,* y *Carlos Santos Correa,* abogados de la recurrente. El recurrido no compareció.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

### SENTENCIA

Por los motivos consignados en las anteriores [subsiguientes] opiniones, se confirma la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 9 de enero de 1964.

Así lo pronunció y manda el Tribunal y firma el Señor Juez Presidente. El Juez Asociado Señor Dávila concurre en el resultado por los fundamentos expuestos en *Cortijo Walker* v. *Fuentes Fluviales,* 91 D.P.R. 574 (1964).

(Fdo.) LUIS NEGRÓN FERNÁNDEZ
*Juez Presidente*

Certifico:

(Fdo.) IGNACIO RIVERA
*Secretario*

—O—

Opinión concurrente del Juez Asociado Señor Blanco Lugo
San Juan, Puerto Rico, a 20 de enero de 1965

Eliezer Marcano Torres, un obrero que trabajaba en obras de construcción del patrono asegurado Salvador L. Morales, sufrió un accidente que fue compensado bajo la Ley de Accidentes del Trabajo, al venir en contacto con unos alambres eléctricos de alta tensión de las líneas operadas por la Autoridad de las Fuentes Fluviales. Concluida la gestión ante el Fondo del Seguro del Estado, y al amparo de las disposiciones del Art. 31 de la Ley Núm. 45 de 18 de abril de 1935, 11

L.P.R.A. sec. 32, que le permiten reclamar cuando el accidente ha provenido bajo circunstancias que hicieren responsable a un tercero, inició acción contra la mencionada instrumentalidad pública alegando que las lesiones recibidas se debieron *"única y exclusivamente"* a la negligencia de dicha demandada consistente en determinados actos afirmativos. [1]

Diecisiete meses después la Autoridad presentó una demanda de tercero dirigida contra el patrono Morales en la cual alegó que éste en forma ilegal, imprudente y negligente, realizó o permitió que se realizaran las obras de construcción en las inmediaciones y vecindad de las instalaciones y líneas de la tercera demandante sin tomar precauciones para evitar que alguna persona viniera en contacto con las mismas, sin ponerlo en conocimiento de la Autoridad para permitirle actuar en tal situación, "y en violación de un deber independiente, expreso o implícito impuesto por ley *Para con la Autoridad, siendo todo ello la causa única y exclusiva del accidente en este caso.*" Expuso, además, que

---

[1] Lee el párrafo 13 de la demanda, en lo pertinente, como sigue:

". . . la que tenía conocimiento de que se estaba llevando a efecto la obra de construcción a que se ha hecho mención anteriormente, en la Avenida Muñoz Rivera, esquina Calle Arroyo de Hato Rey, P.R., habiendo intervenido directamente en la aprobación de los planos eléctricos para dicha construcción; y dada la proximidad de dichos alambres eléctricos de alta tensión a la obra en construcción, razonablemente podía prever y anticipar la ocurrencia de un accidente como el ocurrido en el caso de autos; no habiendo, sin embargo, dado aviso de clase alguna al contratista que tenía a su cargo la obra de construcción de referencia, ni a sus obreros, del peligro de dichos alambres eléctricos, ni habiendo tomado tampoco medida de precaución alguna para evitar dicho accidente, no estando dichos alambres eléctricos insulados; ni habiendo mantenido una debida y rigurosa inspección de la línea eléctrica mencionada, sabiendo, como sabía, que se estaba llevando a efecto dicha obra de construcción, ya que además de haber aprobado los planos eléctricos para la misma, como más arriba hacemos constar, estaba la demandada suministrando servicios de energía eléctrica a la primera planta de dicho edificio en construcción; y por mantener, además, líneas eléctricas de alta tensión colgando de postes en un área comercial, como lo es el sitio donde ocurrió el accidente de referencia, donde no solamente está en su apogeo la industria de la construcción, sino que se llevan a cabo también otras actividades a tono con el desarrollo industrial y comercial de aquel área."

de ser ella responsable al demandante, la pérdida sufrida con tal motivo sería el resultado de la culpa o negligencia del tercero demandado y éste estaría obligado a resarcirle de la totalidad o de la *parte* de aquella cantidad que se viere obligada a satisfacer a la parte actora.

El tercero demandado solicitó se dictara sentencia sumaria aduciendo que tratándose de un patrono asegurado el remedio previsto por el Art. 20 de la Ley de Accidentes del Trabajo era exclusivo, a lo cual se allanó el demandante, poniendo así de manifiesto que rehusaba incluirle como parte demandada. El tribunal de instancia declaró con lugar la solicitud y desestimó la demanda.

No creemos necesario discutir la procedencia de la demanda de tercero bien bajo la teoría de contribución o la de indemnización, véase *Cortijo Walker* v. *Fuentes Fluviales*, 91 D.P.R. 574 (1964), pues no importa la caracterización que pretenda atribuírsele al origen de la responsabilidad, un examen de las alegaciones que hemos resumido demuestra que el tercero demandado fue traído al pleito para responderle al demandante original, y ello lo impide la vigente Regla 12.1 de las de Procedimiento Civil de 1958, que sólo lo permite cuando se trata de una persona que le sea o pueda serle responsable al tercero demandante por toda o parte de la reclamación de la parte actora original. (²) La base de la

---

(²) Bajo la Regla 14(a) de las de Enjuiciamiento Civil de 1943, la demanda contra tercero podía instarse cuando se alegaba que el tercero demandado le era o podía serle responsable al tercero demandante o a la parte actora. En este último caso la actuación del demandado no tenía más efecto que el de una oferta al demandante para que enmendara la demanda original a los fines de incluir un demandado adicional. Si el demandante ignoraba esta oferta—como frecuentemente ocurría para no privar a las cortes de distrito federales de jurisdicción por razón de diversidad de ciudadanía—procedía la desestimación de la demanda contra tercero, pues éste no se encontraba propiamente ante el tribunal. Es por eso que, a mi juicio, fue errónea nuestra actuación en *Simonpietri* v. *Blanco* v. *Lippit & Simonpietri*, 74 D.P.R. 533 (1953), al confirmar una sentencia del tribunal inferior que responsabilizó al tercero demandado del pago de unos daños sin que el demandante hubiese enmendado su demanda para

causa que se ejercita en efecto conduce a imputar al tercero demandado la responsabilidad única y exclusiva por los daños ocasionados. Responsabilidad que sólo es exigible por el demandante Marcano. Procesalmente no estaba disponible para el demandado el recurso de la demanda contra tercero. Esto en forma alguna le impide que en su día aduzca y establezca como defensa que no incurrió en actos negligentes de los cuales pueda emanar responsabilidad, cfr. *Vda. Dávila* v. *Fuentes Fluviales*, 90 D.P.R. 321 (1964), y que ésta sólo puede atribuirse al tercero.

Procede, pues, la confirmación de la sentencia.

—O—

Opinión separada del Juez Asociado Señor Ramírez Bages
San Juan, Puerto Rico, a 20 de enero de 1965

La cuestión que se plantea en este recurso—al igual que la que se planteó en el caso de *Cortijo Walker* v. *Fuentes Fluviales*, 91 D.P.R. 574 (1964) — requiere que determinemos si en el caso en que un obrero lesionado, luego de recibir compensación del Fondo del Seguro del Estado demanda a un tercero, o sea la recurrente Autoridad de las Fuentes Fluviales de Puerto Rico, puede ésta reclamar indemnización por medio de demanda de tercero contra el patrono del lesionado

incluirle como parte demandada adicional. Cf. *Viñas* v. *Pueblo Supermarket*, 86 D.P.R. 33 (1962), especialmente el escolio 5.

En 1946 se enmendó la regla federal correspondiente *por razones muy peculiares a la jurisdicción federal* para eliminar la disposición que permitía la demanda contra tercero cuando éste era o podía serle responsable al demandante. Al revisar nuestras reglas en 1958 adoptamos esa enmienda. Conviene reexaminar este aspecto de nuestro sistema procesal.

Véanse en relación con el problema discutido, el informe del Comité Consultivo de las Reglas Federales de Procedimiento Civil en cuanto a la enmienda de 1946 que aparece en Moore's *Federal Practice* (2d ed.), Vol. 3, págs. 413–415, Clark, *Experience under the Amendments to the Federal Rules of Civil Procedure*, 8 F.R.D. 497 (1949); Landis y Landis, *Federal Impleader*, 34 Cornell L.Q. 403 (1949); Poteat, *Third Party Practice under the New Rules*, 25 A.B.A.J. 858 (1939); y 29 Va. L. Rev. 981 (1943).

fundándose en que dicho patrono permitió que se realizaran obras de construcción de un edificio en violación de disposiciones del Reglamento de Seguridad Industrial en Construcciones y Reparaciones (29 R.&R.P.R., sec. 326–29, Regla 25(a), promulgado al amparo de la Ley Núm. 112 de 5 de mayo de 1939—29 L.P.R.A. secs. 322–323 y 335), con motivo de lo cual se lesionó el obrero Eliezer Marcano, a pesar de que el Art. 21 de la Ley de Compensaciones por Accidentes del Trabajo dispone que el derecho establecido en dicha ley "para obtener compensación será el único remedio en contra del patrono."

En el caso de *Cortijo Walker*, supra, bajo hechos similares a los que nos ocupan, determinamos que no procede acción alguna contra el patrono, pues en estas circunstancias el remedio que provee la Ley de Compensaciones a Obreros es el "único remedio en contra del patrono."

Aunque convenimos que bajo la circunstancia de estos casos no procede responsabilizar al patrono, creemos que debemos precisar los fundamentos que tenemos para esta conclusión.

Se ha tratado de responsabilizar al patrono en casos como éste invocando bien el derecho de contribución a que se refiere el caso de *García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951), o el derecho de indemnización provisto por el Art. 1054 del Código Civil (31 L.P.R.A. sec. 3018).

En vista de lo dispuesto en el citado Art. 21 de la Ley de Compensaciones, no puede reclamarse el derecho de contribución por una persona contra un patrono cuando aquélla es responsable de los daños sufridos por un obrero conjuntamente con el patrono de éste en el caso en que tales daños sean compensables bajo la referida ley. *Halcyon Lines* v. *Haenn Ship Corp.*, 342 U.S. 282 (3d Cir. 1952); *Fidelity & Casualty Co. of N.Y.* v. *J. A. Jones Const. Co.*, 325 F.2d 605 (8th Cir. 1963); *Bertone* v. *Turco Products*, 252 F.2d 726

(3d Cir. 1958); *Peak Drilling Co. v. Halliburton Oil Well Cement. Co.*, 215 F.2d 368 (10th Cir. 1954); *Hendrickson v. Minnesota Power & Light Company*, 104 N.W.2d 843 (Minn. 1960); *Employers Mutual Liabil. Ins. Co. v. Griffin Constr. Co.*, 280 S.W.2d 179 (Ky. 1955); *Farren v. New Jersey Turnpike Authority*, 106 A.2d 752 (N.J. 1954); *"Effect of Workmen's Compensation Act on Right of Third Person Tortfeasor to Recover Contribution from Employer of Injured or Killed Workman"*, 53 A.L.R.2d 977. La razón es que cuando dos personas son responsables de un acto torticero, lógicamente una no puede exigir contribución de la otra si ésta ha sido inmunizada contra reclamación por el acto torticero por una defensa personal como lo es la disposición del Art. 21 de la Ley de Compensaciones por Accidentes del Trabajo en Puerto Rico.

En el caso ante nos se alega, sin embargo, que el patrono del obrero lesionado no queda inmune por razón de lo dispuesto en el Art. 21 de la Ley de Compensaciones por Accidentes del Trabajo, de una reclamación de indemnización de una tercera persona basada en la conducta torticera de ese patrono en relación con dicha tercera persona.

Tribunales federales y de jurisdicciones estatales estadounidenses han sostenido el derecho de indemnización en casos de estibadores empleados por un contratista para descargar la embarcación de un tercero cuando el obrero sufrió lesiones en el barco, no causadas por la negligencia de su patrono pero sí debido a equipo defectuoso suplido por éste (el obrero recibió compensación bajo la ley de compensaciones de estibadores y luego demandó y obtuvo daños y perjuicios del dueño del barco), bien bajo la teoría de que el contratista había garantizado implícitamente un servicio adecuado (*workmanlike*), *Italia Soc. v. Ore. Stevedoring Co.*, 376 U.S. 315 (1964), o que el contratista había violado su contrato con el dueño del barco de suplirle mano de obra y supervisión "para llevar a cabo el trabajo adecuado y eficien-

temente" o había violado su contrato de cumplir con razonable seguridad. *Weyerhaeuser S.S. Co.* v. *Nacirema Co.*, 355 U.S. 563 (1958) *Ryan Co.* v. *Pan-Atlantic Corp.*, 350 U.S. 124 (1956). En estos casos la ley de compensaciones disponía que "la responsabilidad del patrono era exclusiva y cubría la responsabilidad de tal patrono para con el empleado, sus representantes legales, marido o mujer, padres, dependientes, parientes y cualquier otra persona que por cualquier razón tuviese derecho a recobrar daños de tal patrono . . . debido a tal daño o muerte." *Horton* v. *Moore-Mc-Cormack Lines, Inc.*, 326 F.2d 104 (2d Cir. 1964); *Damanti* v. *A/S Inger*, 314 F.2d 395 (2d Cir. 1963); *Koninklyke Nederlandsche, etc.* v. *Strachan Shipping Co.*, 301 F.2d 741 (5th Cir. 1962); *Northern Natural Gas Company* v. *Roth Packing Company*, 323 F.2d 922 (8th Cir. 1963); *Crawford* v. *Pope Talbot, Inc.*, 206 F.2d 784 (3d Cir. 1953); *Hart* v. *Simons*, 223 F.Supp. 109 (D.C.E.D. Pa. 1963); *Blackford* v. *Sioux City Dressed Pork, Inc.*, 118 N.W.2d 559 (Iowa 1962); *Moroni* v. *Intrusion-Prepakt, Incorporated*, 165 N.E.2d 346 (Ill. 1960); *San Francisco U. Sch. Dist.* v. *California Bldg. Main. Co.*, 328 P.2d 785 (Cal. 1958); *Baugh* v. *Rogers*, 148 P.2d 633 (Cal. 1944); McCoid, *The Third Person in the Compensation Picture: A Study of the Liabilities and Rights of Non-Employers*, 37 Texas L. Rev. 389 (1958–1959); *The Exclusive Remedy Provision of Workmen's Compensation Acts—Distribution of Risk Between a Concurrently Negligent Employer and Third Party*, 25 U. Chi. L. Rev. 522 (1957–58); *Recent Developments in the Iowa Workmen's Compensation Law Where Negligent Third Parties are Involved*, 37 Iowa L. Rev. 84 (1951–52).

En el estado de Nueva York, aun en ausencia de una relación de naturaleza contractual, se ha sostenido el derecho de indemnización cuando el patrono ha sido activamente negligente y el tercero de quien el obrero reclamó no contribuyó a la ocurrencia del accidente mediante cualquier acto afir-

mativo de negligencia de su parte o cuando existe gran disparidad entre la falta del patrono y la del tercero y cuando la del tercero y cuando la prueba demuestra que el patrono es el responsable (*wrongdoer*) primario. En este caso se rechazó la defensa que la responsabilidad del patrono era exclusiva bajo un estatuto de compensaciones en términos similares a los expuestos previamente. *McFall* v. *Compagnie Maritime Belge* (*Lloyd Royal*) *S.A.*, 107 N.E.2d 463 (N.Y. 1952) ; *Rich* v. *United States*, 177 F.2d 688 (2d Cir. 1949) ; *Roberson* v. *Bitner*, 221 F.Supp. 279 (D.C.E.D. Tenn. 1963) ; *Great Northern Railway Co.* v. *Bartlett & Co. Grain*, 298 F.2d 90 (8th Cir. 1962) ; *Shell Oil Company* v. *Foster-Wheeler Corporation*, 209 F.Supp. 931 (D.C.E.D. Ill. 1962) ; *Krambeer* v. *Canning*, 184 N.E.2d 747 (Ill. 1962).

Dice el Profesor Larson en su obra *The Law of Workmen's Compensation*, Vol. II, secs. 76–30 *et seq.*, págs. 233-238, que la procedencia de una reclamación de indemnización contra un patrono por daños compensables bajo una ley de compensación por accidentes del trabajo, depende únicamente de si la responsabilidad es debido a los daños para los cuales se provee compensación. Se justifica la indemnización en casos como *Italia Soc.*, supra, *Weyerhaeuser*, supra, *Ryan*, supra y otros, a base de una obligación o garantía de naturaleza contractual, porque la acción contra el patrono no es debido a los daños ocasionados, ya que puede seguirse su rastro hasta su origen en un determinado contrato entre el tercero demandante y el patrono. Pero en los casos de una obligación implícita de un responsable primario por un acto torticero de reembolsar al responsable secundario, aunque la forma de la acción no es *ex delicto*, el origen de la acción es el daño ocasionado y las circunstancias al margen, y las responsabilidades que surgen del mismo, y la *obligación de indemnizar depende exclusivamente de la comparación de las relaciones de ambas partes con respecto al daño.*

Las circunstancias en *White* v. *McKenzie Electric Cooper-ative, Inc.*, 225 F.Supp. 940 (D.C.D.N. Dak. 1964), son similares a las que nos ocupan. El obrero lesionado, luego de recibir compensación demandó en daños y perjuicios a un tercero, una cooperativa de electricidad, y ésta radicó demanda contra tercero contra el patrono alegando que *éste fue negligente al violar ciertos requisitos de seguridad provistos por ley y que tenía la obligación de cumplirlos para con el tercero demandante;* que como resultado del incumplimiento de tal obligación la cooperativa tenía derecho a que el patrono la indemnizara; que si se resolvía que aquélla era negligente en la acción principal su negligencia era pasiva mientras que la del patrono era activa. El estatuto del Estado sobre compensaciones a obreros disponía que los patronos que lo cumplan "no serán responsables en daños . . . por las lesiones o muerte de cualquier empleado" y que "El pago de compensación . . . será en sustitución (*in lieu*) de cualquier y todos los derechos de acción contra el patrono del obrero lesionado". Se concluyó que la intención legislativa que se deduce del lenguaje del estatuto es de proveer una responsabilidad exclusiva; que "la gran mayoría de las autoridades es al efecto de que tal disposición de exclusividad, de por sí, elimina toda causa de acción de un tercero contra el patrono". *Añadió el tribunal que, además, en este caso no aparece de las alegaciones que entre la cooperativa y el patrono existiera relación contractual alguna, expresa o implícita de manera que no puede invocarse la doctrina establecida en Italia Soc., supra, ni la de Ryan, supra.* La corte rechazó la doctrina de la "negligencia activa y pasiva" porque "no puede existir una responsabilidad común para con el empleado cuando la del patrono se rige por los términos de una ley de compensaciones a obreros y la del tercero está basada en la negligencia del derecho común". *City of Abilene* v. *Jones*, 355 S.W.2d 597 (Tex. 1962); *A. O. Smith Corp.* v. *Associated Sales & Bag Co.*, 113 N.W.2d 562 (Wis. 1962); *Slechta* v.

*Great Northern Railway Company*, 189 F.Supp. 699 (D.C. N.D. Iowa 1961), confirmado en *Great Northern Railway Company*, supra; *Peak Drilling Co.*, supra.

En *Slechta*, supra, se basó la reclamación de indemnización en la obligación que tenía el patrono de manipular y conservar los vagones de ferrocarril en tal forma que no causaran daño o perjuicio al dueño de los mismos y fue en la manipulación de un vagón que el obrero compensado se lesionó. El tribunal, aunque reconoció el derecho a indemnización cuando el patrono viola una obligación independiente, contractual o implícita en derecho, concluyó que no podía inferirse que existiera tal obligación de parte del patrono bajo las circunstancias previamente relacionadas.

En el caso ante nos se alega que la negligencia de la recurrente dio lugar al accidente con motivo del cual se lesionó el obrero compensado y aquélla alega a su vez que el patrono tenía la obligación independiente para con ella de cumplir con ciertos reglamentos de seguridad que tienen fuerza de ley y el no cumplirlos fue la causa del accidente, y que la pérdida que sufra la recurrente con tal motivo sería el resultado de la culpa o negligencia del patrono. No se ha alegado que tal pérdida, si la hubiere, se deba a la violación por el patrono de ninguna obligación contractual expresa o implícita para con la recurrente. Aunque la Ley de Compensaciones por Accidentes del Trabajo, en cuanto a la inmunidad del patrono contra reclamaciones por razón de daños y perjuicios compensables que sufra uno de sus obreros, está redactada en términos algo distintos a los de la ley envuelta en *White*, supra, no es menos cierto que al disponer que "el derecho . . . para obtener compensación será el único remedio en contra del patrono", clara e indubitablemente proveyó que el patrono no estuviese sujeto a reclamación otra alguna con motivo de los daños sufridos por el obrero lesionado. La violación del referido reglamento de seguridad por el patrono da base para sostener que esa negligencia del patrono fue

otra causa directa del accidente en cuestión, de manera que en efecto en la demanda y en la demanda contra tercero se alega que la recurrente y el patrono son responsables conjuntamente de los daños sufridos por el obrero. No creemos juicioso reconocer el derecho de indemnización a base de diferenciaciones en calidad, extensión o grado de la negligencia del tercero y el patrono ya que, después de todo, el origen de tal derecho es el daño ocasionado al obrero "y la obligación de indemnización depende exclusivamente de la comparación de las relaciones de ambas partes con respecto al daño". Por lo tanto el reconocer el derecho de indemnización en tales circunstancias es una forma indirecta de imponer una responsabilidad al patrono, de la cual la ley lo liberó.

*Por tales razones se confirmará la sentencia sumaria dictada por el tribunal de instancia.*

